IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DAWN R. WEST, et al. | * |
| Plaintiffs, | * |
| v. | *     CIVIL NO. JKB-24-0333 |
| KAREN T. PITMAN, M.D., et al., | * |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM AND ORDER

Pending before the Court are Defendants Karen T. Pitman, M.D. and Johns Hopkins University's Motion for Qualified Protective Order (ECF No. 88) and Defendants Robert M. Grill, D.D.S. and TMJ/Facial Pain Center, LLC's Joinder of Co-Defendants' Motion for Qualified Protective Order (ECF No. 89). The motions will be denied for the reasons that follow.

### I. BACKGROUND

Plaintiffs, a married couple from Delaware, filed this medical malpractice action in February 2024, alleging that Defendants negligently caused a delay in the diagnosis and treatment of adenoid cystic carcinoma in Plaintiff Dawn R. West's ("West's") parotid gland. (ECF No. 1.) Plaintiffs brought claims for negligence, failure to obtain informed consent, and loss of consortium against three individuals—Karen T. Pitman, M.D., Daniel J. Kelley, M.D., and Robert M. Grill, D.D.S.—and four medical practices—The Johns Hopkins University ("JHU"), Eastern Shore ENT & Allergy Associates, P.A. ("Eastern Shore"), TMJ/Facial Pain Center, LLC ("TMJ"), and Greater Baltimore Medical Center, Inc., d/b/a GBMC Health Partners Head & Neck Surgery ("GBMC"). (*Id.*) All seven Defendants answered (ECF Nos. 6, 7, 16, 18), and the case proceeded to discovery.

In September 2024, Dr. Grill and TMJ filed a third-party complaint against Julian Thayer Simmons, M.D., and Advanced Radiology, P.A. ("Advanced Radiology"), alleging that if Dr. Grill and TMJ are found liable, then Dr. Simmons and Advanced Radiology are liable to them for indemnification and/or contribution. (ECF No. 36.) And in January 2025, Plaintiffs filed an action against Dr. Simmons and Advanced Radiology (Civ. No. 25-00292), which has been consolidated with this case. (ECF No. 59.) Dr. Simmons and Advanced Radiology moved to dismiss Plaintiffs' claims against them, which the Court denied. (ECF No. 80.) At the Court's direction, Plaintiffs filed an Amended Complaint (ECF No. 81), making no substantive changes but combining the factual allegations and legal contentions from their two previous complaints.

Discovery closed on August 15, 2025. (ECF Nos. 83, 91, 92.) That same day, Dr. Pitman and JHU filed their Motion for Qualified Protective Order (ECF No. 88), seeking an order permitting them to speak, *ex parte* and informally, with several treating physicians of West's—Rodney Taylor, M.D., Kalpesh Tarun Vakharia, M.D., Adam Craig Kaufman, M.D., and Dan K. Kunaprayoon, M.D. (collectively, the "treating physicians"). On August 22, 2025, Dr. Grill and TMJ filed their Joinder of Co-Defendants' Motion for Qualified Protective Order (ECF No. 89), seeking to join Dr. Pitman and JHU's Motion and provide additional argument in support thereof.

Dr. Pitman and JHU argue that the treating physicians "are uniquely positioned to comment on the issues most relevant to this case," but are not agents or employees of the Defendants (ECF No. 88-1 at 3–4); that facilitating *ex parte* informal communications with the treating physicians would "ensure fairness and rectify Plaintiff's significant discovery advantage," as "Plaintiff's counsel already enjoys the opportunity for unrestricted and private meetings with [the treating physicians]" (*id.* at 4); that permitting such communications would "promote judicial economy and lessen the burden on the parties and the treating providers" (*id.* at 12); and that their proposed order is necessary and sufficient to protect West's privacy interests, as enshrined in the Health

Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d, *et seq.* ("HIPAA") and Maryland law (*id.* at 4–10).

## II.   LEGAL STANDARDS

HIPAA and the related standards promulgated in the Code of Federal Regulations set forth requirements for the release of health information. *See* 45 C.F.R. § 164.512; *Law v. Zuckerman*, 307 F. Supp. 2d 705, 708 (D. Md. 2004). HIPAA preempts state law relating to the privacy of health information unless state law is "more stringent." 42 U.S.C. § 1320d-7(a)(2)(B); 45 C.F.R. § 160.203(b). Because Maryland law is not "more stringent," federal law controls here. *Law*, 307 F. Supp. 2d at 708–09; *Piehl v. Saheta*, Civ. No. CCB-13-254, 2013 WL 2470128, at *1 (D. Md. June 5, 2013).

HIPAA provides that protected health information may be disclosed in the course of a judicial proceeding in two circumstances. 45 C.F.R. § 164.512(e). First, counsel may obtain a court order expressly authorizing disclosure of specific protected health information, *id.* § 164.512(e)(1)(i), which this Court has referred to as a "disclosure order." *Lynch v. SSC Glen Burnie Operating Co., LLC*, Civ. No. JKB-17-1328, 2017 WL 6508980, at *2 (D. Md. Dec. 20, 2017). Second, disclosure may be made in response to a subpoena, discovery request, or "other lawful process" if the requesting party provides assurances that reasonable efforts have been made (a) to notify the individual whose health information is at issue and resolve any objections to disclosure, or (b) to secure a "qualified protective order" ("QPO") prohibiting use of the information outside of the proceedings and requiring return/destruction of the information at the conclusion of the proceedings. 45 C.F.R. § 164.512(e)(1)(ii)–(iv). Courts in this district have understood the "other lawful process[es]" referred to in § 164.512(e)(1)(ii) to mean other "traditional means of discovery." *Law*, 307 F. Supp. 2d at 711.

In sum: "a party seeking protected health information under HIPAA for use in litigation can ask a court for a disclosure order, permitting a health care provider to disclose such information, and/or can ask a court for a QPO, which serves as a sort of general discovery order, governing how protected information should be handled once obtained pursuant to ordinary discovery procedures." *Lynch,* 2017 WL 6508980, at *2.

## III.   ANALYSIS

### A.   Dr. Pitman and JHU's Motion

The order sought by Dr. Pitman and JHU would be both a disclosure order and qualified protective order, since it would both authorize the disclosure of protected health information and govern its use during and after the instant proceedings. (ECF No. 88-2.) However, 45 C.F.R. § 164.512(e)(1)(ii) is inapplicable here because discovery has closed, and no party has sought to reopen it. (ECF Nos. 83, 91, 92.) Given this, a disclosure order would be necessary here—HIPAA permits the informal, outside-of-discovery disclosures that are sought here only if the Court specifically authorizes them.

Dr. Pitman and JHU have not shown that a disclosure order is warranted. As this Court has previously held:

> [F]or the Court to issue a disclosure order permitting *ex parte* communications with persons disclosing protected information under HIPAA, the party moving for such an order must demonstrate a compelling reason why traditional discovery methods are insufficient. Furthermore, mere desires to level the playing field or to lower costs and engage in more efficient fact finding, are generally insufficient reasons. Put differently, a party seeking a disclosure order must demonstrate why standard discovery is insufficient, and that reason cannot simply be the inherent difficulty in contacting witnesses created by HIPAA.

*Lynch,* 2017 WL 6508980, at *3 (collecting cases); *see also Logue v. Patient First Corp.,* Civ. No. JKB-16-3937, 2018 WL 9917847, at *1 (D. Md. Jan. 22, 2018).

Dr. Pitman and JHU have not provided a compelling reason why traditional discovery of the treating physicians' views was insufficient. As Plaintiffs rightly contend (*see* ECF No. 93 at 2),

4

Dr. Pitman and JHU had every opportunity to explore West's health information in the ordinary course, including by deposing or serving third-party subpoenas on the treating physicians. Indeed, by Dr. Pitman and JHU's own lights, the relevance of the treating physicians' testimony should have been plain from the outset: the treating physicians have been involved in West's care since before the instant suit was filed.[1] (*See* ECF No. 88-1 at 2.) Dr. Pitman and JHU do not assert that there was any unfair surprise or unanticipated circumstance that brought the treating physicians, or the relevance of their testimony, to light only after discovery closed.

To the contrary, the only reasons Dr. Pitman and JHU advance in support of their request are exactly those that this Court has previously held to be insufficient. First, Dr. Pitman and JHU argue that it is unfair that the parties have asymmetrical access to the treating physicians:

> Any information gathered during [a defendant's] deposition [of the treating physicians] is not confidential, and it exposes the defense counsel's legal theories and strategies. Alternatively, if defense counsel foregoes depositions, they may miss out on evidence that would have aided their clients' positions. Plaintiff's counsel does not face a similar dilemma, because Plaintiff is entitled to determine—in private—what the physicians are likely to say, and therefore know whether it would be to their client's strategic benefit to call [them] as witnesses.

(ECF No. 88-1 at 11.) But the fact that parties to a lawsuit may have different degrees of access to a fact witness is neither exceptional nor confined to the HIPAA context. And Dr. Pitman and JHU's Motion provides no reason to think this asymmetry exceeds what an ordinary litigant in this context experiences. Thus, this argument is unavailing. *See Lynch*, 2017 WL 6508980, at *4.

Second, Dr. Pitman and JHU argue that confinement to traditional discovery is inefficient: "The time and cost of noting and scheduling depositions, hiring court reporters, traveling to and from deposition[s] . . . which may or may not prove fruitful, is an avoidable economic and time burden on the attorneys and parties [and witnesses]." (ECF No. 88-1 at 13.) Again, though, this

---

[1] While Dr. Pitman and JHU's Motion describes the roles of three of the four treating physicians, it neglects to describe Dr. Kaufman's role in any way and thus fails to show that he would have information relevant to this case. But even if he does, the Court's analysis remains unchanged.

5

is par for the course. Even if it is more expensive and burdensome than informal conversations might be, formal discovery strikes the appropriate balance between, on the one hand, Dr. Pitman and JHU's interest in obtaining all relevant information, and on the other hand, West's interest in having irrelevant medical information remain confidential. *See Lynch*, 2017 WL 6508980, at *4 (citing *Piehl*, 2013 WL 2470128, at *3).

Dr. Pitman and JHU have not shown that a disclosure order is warranted. Without a disclosure order (or any authorization to disclose provided by West), no purpose would be served by issuance of a qualified protective order. Accordingly, the Court will deny Dr. Pitman and JHU's Motion in its entirety.

### B. Dr. Grill and TMJ's Joinder of Motion

Dr. Grill and TMJ's brief seeks the same relief as is requested in Dr. Pitman and JHU's Motion and adds only one argument in support thereof—namely, that a "'clear majority' of courts examining this precise issue have recognized that *ex parte* interviews of physicians by defense counsel are acceptable under HIPAA."[2] (ECF No. 89 at 2, 11.)

As should be clear from the above, nothing in the Court's analysis implies that *ex parte* interviews of a plaintiff's physicians by defense counsel are categorically prohibited by HIPAA. Rather, such communications are indeed "acceptable under HIPAA" so long as they comply with 45 C.F.R. § 164.512(e). Many of the cases Dr. Grill and TMJ cite explicitly concur in this assessment. (*See, e.g.*, ECF No. 89 at 2 (citing *Holman v. Rasak*, 761 N.W.2d 391, 395 (Mich. Ct. App. 2008) (permitting *ex parte* communications if a qualified protective order is in place)); ECF No. 89 at 5 (citing *Marzorati v. Medstar-Georgetown Med. Ctr., Inc.*, Civ. No. 16-2161, 2018 WL 11343392, at *1 (D.D.C. Feb. 26, 2018) (permitting *ex parte* communications "[a]s long as the

---

[2] Given the relief sought in Dr. Grill and TMJ's filing—"that this Court issue a Qualified Protective Order permitting defense counsel to engage in *ex parte* communications with Plaintiff's treating healthcare providers" (ECF No. 89 at 11)—the Court construes the filing as a motion adopting Dr. Pitman and JHU's arguments.

6

party seeking disclosure complies with HIPAA's procedural requirements")); ECF No. 89 at 6 (citing *Moreland v. Austin*, 284 Ga. 730, 734 (2008) ("in order for defense counsel to informally interview plaintiff's treating physicians, they must first obtain a valid authorization or court order or otherwise comply with the provisions of 45 C.F.R. § 164.512(e)")).)

Nothing in Dr. Grill and TMJ's brief attempts to support the view that traditional discovery was insufficient in this case and that the necessary disclosure order is therefore warranted. Thus, for the reasons stated above, the Court will deny Dr. Grill and TMJ's Joinder of Motion.

IV.   **CONCLUSION**

It is hereby ORDERED that Dr. Pitman and JHU's Motion for Qualified Protective Order (ECF No. 88) and Dr. Grill and TMJ's Joinder of Co-Defendants' Motion for Qualified Protective Order (ECF No. 89) are DENIED.

DATED this 9 day of October, 2025.

BY THE COURT:

_____
James K. Bredar
United States District Judge